**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | |
|---|---|
| **Tracy Hill,** *Plaintiff,* v. **Capstone Credit & Collections, LLC,** *Defendant.* | Case Number: _____ Ad Damnum: **$3,000 + Atty Fees & Costs** **JURY TRIAL DEMANDED** |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

**COMES NOW** the Plaintiff, **Tracy Hill** ("**Ms. Hill**"), by and through her attorneys, Seraph Legal, P.A., and complains of the Defendant, **Capstone Credit & Collections, LLC** ("**Capstone**"), stating as follows:

**PRELIMINARY STATEMENT**

1. This is an action brought by Ms. Hill against Capstone for violations of the *Fair Debt Collection Practices Act*, 15 U.S.C. § 1692, *et seq.* ("**FDCPA**"), the *Fair Credit Reporting Act*, 15 U.S.C. § 1681, *et seq.* ("**FCRA**"), and the *Florida Consumer Collection Practices Act*, Section 559.55, Florida Statutes, *et seq.* ("**FCCPA**").

**JURISDICTION AND VENUE**

2. Subject matter jurisdiction arises under the FDCPA, 15 U.S.C. § 1692k(d), the FCRA, 15 U.S.C. § 1681p, and the FCCPA, Section 559.77(1), Florida Statutes.

3. This Court has supplemental jurisdiction for Ms. Hill's state law claims pursuant to 28 U.S.C. § 1367.

4. Capstone is subject to the provisions of the FDCPA, the FCRA, and the FCCPA and to the jurisdiction of this Court pursuant to 28 U.S.C § 1331.

5. Venue is proper in the Middle District of Florida, pursuant to 28 U.S.C. §1391(b)(2), because the events giving rise to this cause of action occurred within this District.

## PARTIES

### Ms. Hill

6. **Ms. Hill** is a natural person residing in the City of Zephyrhills, Pasco County, Florida, and a *Consumer* as defined by the FDCPA, 15 U.S.C. § 1692a(3), the FCRA, 15 U.S.C. § 1681a(c), and the FCCPA, Section 559.55(8), Florida Statutes.

### Capstone

7. **Capstone** is a Florida limited liability company with a primary business address of **120 Lutz Lake Fern Road W., Lutz, FL 33548.**

8. Capstone's Florida registered agent is **Doug W. Cullaro, 120 Lutz Lake Fern Road W., Lutz, FL 33548.**

9. Capstone is registered with the Florida Office of Financial Regulation as a *Consumer Collection Agency* ("CCA"), holding license number **CCA0800916**. **SEE PLAINTIFF'S EXHIBIT A.**

### DEFENDANT IS A DEBT COLLECTOR

10. Capstone is a *Debt Collector* within the meaning of the FDCPA, 15 U.S.C. §1692a(6), and the FCCPA, Section 559.55(7), Florida Statutes, in that it uses postal mail

or another instrumentality of commerce, both interstate and within the State of Florida, for its business, the principal purpose of which is the collection of debts. Alternatively, Capstone regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

## FACTUAL ALLEGATIONS

11.     Around April 2017, Ms. Hill allegedly incurred a debt (the "**Debt**") to Century Cross Creek ("**Century**"), an apartment community in Tampa, Florida.

12.     The Debt arose from transactions which were for family, personal, or household purposes, specifically the rental of a personal dwelling, and therefore meets the definition of *Debt* under the FDCPA, 15 U.S.C. § 1692a(5), and the FCCPA, Section 559.55(6), Florida Statutes.

13.     The Debt primarily stemmed from Ms. Hill's purported failure to remain a tenant at Century for the full 12-month term of her lease. Century assessed two months' worth of rent as an early termination fee or liquidated damage.

14.     Under Florida law, for a landlord to obtain liquidated damages or an early termination fee, the landlord must provide a *separate addendum* in the lease containing the terms of the clause where the tenant agrees to pay liquidated damages or an early termination fee, so that the consumer's attention is drawn to this important clause, in a format substantially similar to the following:

> ☐ I agree, as provided in the rental agreement, to pay $ (an amount that does not exceed 2 months' rent) as liquidated damages or an early termination fee if I elect to terminate the rental agreement, and the landlord waives the right to seek additional rent beyond the month in which the landlord retakes possession.

☐ I do not agree to liquidated damages or an early termination fee, and I acknowledge that the landlord may seek damages as provided by law.
Section 83.595(4), Florida Statutes

15. The consumer may select their choice, agreeing to pay either up to two months' rent as liquidated damages **or** to be liable for the remaining rent due on the lease, minus whatever rent the landlord collects after re-letting the unit.

16. When signing her lease, Ms. Hill declined to be responsible to pay liquidated damages in the event of early termination.

17. Despite this, Century assessed two months' worth of rent as a liquidated damage for Ms. Hill's early termination of her lease, despite no basis in law to charge her this.

18. Within 15 days of vacating her apartment at Century, Ms. Hill returned to the apartment complex to contest the Debt with Century's management. Ms. Hill's former apartment had already been re-rented, and a new tenant was occupying it.

19. On or about April 1, 2018, Century, or its successor in interest, transferred, placed, or otherwise assigned the Debt to Capstone for collection, claiming Ms. Hill owed $2,033.46

20. Capstone thereafter reported the Debt to multiple *Consumer Credit Reporting Agencies* ("**CRAs**"), including Experian and Trans Union.

21. Capstone also sent numerous collection letters to Ms. Hill and made collection calls to Ms. Hill.

22. In at least one of the calls, Ms. Hill explained that the Debt was bogus due to illegitimate liquidated damage charges for early termination and that she was aware a new tenant had moved into her former apartment at Century quickly after she left.

23. Despite this, Capstone continued to attempt to collect the Debt from Ms. Hill.

24. On November 4, 2019, Capstone mailed Ms. Hill a letter titled "***FINAL NOTICE***" and stated, "At this time, you have left this agency no other option but to recommend that our client pursue accordingly. You have seven (7) days to call and make arrangements to pay your debt. Govern yourself accordingly!" **SEE PLAINTIFF'S EXHIBIT B.**

25. Capstone's letter was a thinly veiled threat of legal action. Capstone knew that language like "recommend that our client pursue accordingly" will be taken to mean a lawsuit will be filed in the event of non-payment by the vast majority of consumers whom would read the letter. Capstone reiterated this narrative by claiming some arbitrary deadline of seven days, indicating this was the time left to avoid escalation to litigation. Capstone even selected the phrase "govern yourself accordingly" because it is a cliché phrase often used by attorney debt collectors.

26. Moreover, despite the bold, all-caps headline proclaiming this was Ms. Hill's "FINAL NOTICE," it was anything but. Well after the seven-day deadline, Capstone continued to call Ms. Hill and send multiple other collection letters.

27. "While a debt collector can . . . make his initial offer a final one, he cannot pretend that it is final if it is not, in the hope that the debtor will think it final. *DeKoven v. Plaza Assocs.*, 599 F.3d 578, 579 (7th Cir. 2010).

28. "If through poor wording of the debt collector's letter the debtor gets the impression that the initial offer is the final one, he may pay it in full and default on other debts, or decide that his position is hopeless and declare bankruptcy." *Id.*

29. Indeed, on March 18, 2020, Capstone mailed Ms. Hill another collection letter, offering to settle the Debt for 50% of balance. **SEE PLAINTIFF'S EXHIBIT C.**

30. Thus, not only was Capstone's November 4, 2019, letter not its final notice, the only ramification of Ms. Hill not paying within the demanded seven days was an offer of a 50% discount. The offer was good for a "limited time only." *Id.*

31. On July 22, 2020, Capstone sent another collection letter to Ms. Hill. The letter again offered a 50% discount but warned Ms. Hill that failure to pay would result in Century instructing Capstone to "evaluate your credit history and present financial circumstances, and then proceed with the appropriate collection action in accordance with the State and Federal Law." **SEE PLAINTIFF'S EXHIBIT D.**

32. Most consumers, upon reading this notice, would presume that Capstone would obtain a *credit bureau report* ("**CBR**") from one or more of the CRAs in order to "evaluate your credit history and present financial circumstances," thereby negatively affecting a consumer's credit scores.

33. However, Capstone had no ability to legally obtain a CBR regarding Ms. Hill.

34. To lawfully request a CBR from a CRA, a debt collector must be collecting a debt which arose from a "**credit transaction involving the consumer**." *See* 15 U.S.C. §1681b(a)(3)(A); *Pigg v. Fair Collections & Outsourcing, Inc.*, No. 1:16-CV-01902-JMS-DML, 2017 WL 3034266, at *4 (S.D. Ind. July 18, 2017) (holding that a debt collection agency did not have a permissible purpose because, even where a debt exists, a "credit transaction is a necessary prerequisite" for § 1681b(a)(3)(A)).

35. A "credit transaction" involving the consumer is a transaction in which the consumer voluntarily participates and enters into an agreement to receive goods or services in advance of payment, with the consent of both parties. *See Pintos v. Pacific Creditors Association*, 504 F. 3d 792, 798 (9th Cir. 2007); *Miller v. Trans Union LLC*, No. 06 C 2883 at *7 (N.D. Ill. Feb. 28, 2007); *Rodriguez v. Experian Info. Sols., Inc.*, Case No. C15-01224RAJ, at *9 (W.D. Wash. Jul. 25, 2016).

36. Neither the lease nor any transaction between Ms. Hill and Century constituted an extension of credit.

37. While the amount claimed owed by Century may constitute a "consumer debt," it is not a *credit transaction* involving the consumer. *Laramore v. Ritchie Realty Mgmt. Co.*, 397 F.3D 544, 546 (7th Cir. 2005) (Affirming the district court's determination that a residential lease was not an extension of credit, stating, "The typical residential lease involves a contemporaneous exchange of consideration — the tenant pays rent to the landlord on the first of each month for the right to continue to occupy the premises for the coming month.")

38. Debt collection is a permissible reason for obtaining a credit report **only when a debt arises from a transaction in which the debtor voluntarily and directly seeks credit**." *Baron v. Mark A. Kirkorsky, P.C.* (Case No. 17-cv-01118, U.S.D.C., District of Arizona) (**Emphasis Added**.)

39. Thus, Capstone threatened to take action which could not legally be taken, and asserted a legal right – the right to obtain Ms. Hill's CBR – when no such right existed.

40. Further, Capstone's claim that it would "proceed with the appropriate collection action in accordance with the State and Federal Law" was crafted to insinuate legal action would be taken in the event of non-payment of the Debt.

41. A significant number of debt collection agencies do frequently resort to litigation for unpaid debts in Florida. While Capstone is not included in that list, it is nonetheless aware that debt collectors are perceived by most consumers as having the ability to sue consumers, even if the debt collector is a non-attorney debt collection agency. Capstone attempts to capitalize on these misconceptions by carefully crafting its demand letters to sound as if legal action is an imminent possibility in the event of non-payment.

42. Indeed, Ms. Hill, upon reading the letter, believed Capstone intended to sue her for the Debt. Ms. Hill became upset, anxious, frustrated, and ultimately sought the advice of legal counsel.

43. In August 2020, after reviewing her Experian consumer credit disclosure, Ms. Hill disputed Capstone's tradeline to Experian, stating the Debt, as reported, was

inaccurate since it consisted primarily of liquidated damages which she did not agree to pay.

44. Experian then forwarded the dispute to Capstone as an *Automated Consumer Dispute Verification* Request ("**ACDV**") through a system known as e-OSCAR and required Capstone to make a reasonable investigation into the dispute.

45. When responding to an ACDV through e-OSCAR, the person sending the response must electronically sign to confirm as follows:

> "[b]y submitting this ACDV, you certify that you have verified the accuracy of the data in compliance with all legal requirements, and your computer and/or manual records will be adjusted to reflect the changes noted."
> *See* e-oscar.org.

46. Upon information and belief, Capstone returned the ACDV to Experian, verifying that it had completed its investigation and that all of its information was accurate. The only item "updated" was the date last reported. **SEE PLAINTIFF'S EXHIBIT E.**

47. "When a furnisher reports that disputed information has been verified, the question of whether the furnisher behaved reasonably will turn on whether the furnisher acquired sufficient evidence to support the conclusion that the information was true." *Hinkle v. Midland Credit Management, Inc.*, 827 F.3d 1295, 1303 (11th Cir. 2016).

48. Capstone could not have acquired sufficient information to conclude its information was accurate because the information simply does not exist. Rather, it simply relied upon the representation of Century – *sans* documentation. Capstone concluded that its reported data was correct, even though Ms. Hill specifically disputed the debt based

upon no agreement to pay liquidated damages and Capstone had no accounting or breakdown of charges with which it could rebut Ms. Hill's dispute.

49. Thus, Capstone failed to make a reasonable investigation of Ms. Hill's dispute after Capstone was notified by Experian that a consumer disputed the accuracy of its report.

50. Capstone continued to report monthly to the CRAs that the Debt was owed, in September and October 2020, even after specific knowledge that the information was false and defamatory.

51. Credit reporting is a "powerful tool designed, in part, to wrench compliance with payment terms … (a creditor's) alleged refusal to correct mistaken information can only be seen as an attempt to tighten the screws on a nonpaying customer." *Rivera v. Bank One*, 145 F.R.D. 614, 623 (D.P.R. 1993).

52. Capstone's letter to Ms. Hill and its reports to the CRAs are *Communications* as defined by 15 U.S.C. § 1692a(2).

53. Ms. Hill has hired the aforementioned law firm to represent her in this matter and has assigned her right to fees and costs to such firm.

### COUNT I
### VIOLATIONS OF THE FDCPA

54. Ms. Hill adopts and incorporates paragraphs 1 – 53 as if fully restated herein.

55. Capstone violated **15 U.S.C. § 1692e and 1692e(10)** in that Capstone used false representations and deceptive means to collect a debt when it: (a) sent a collection

letter in November 2019, claiming it was Ms. Hill's "final" opportunity to resolve a debt, when it was not, and Capstone knew it was not; (b) repeatedly threatened legal action for non-payment of a debt, despite no intention, authority, or ability to sue Ms. Hill; (c) falsely claimed in its July 2020 collection letter that it would obtain Ms. Hill's CBR to evaluate her credit, when Capstone had no legal ability to obtain a CBR regarding Ms. Hill; (d) repeatedly attempted to collect the Debt, founded on the application of unauthorized liquidated damages, despite knowledge that the Debt was not legitimate for this reason; and, (e) reported the Debt to the CRAs even after knowledge that the Debt was not legitimate, in an attempt to compel payment from Ms. Hill.

56.    Capstone violated **15 U.S.C. § 1692e(2)(a)** in that Capstone made false representations about the character, amount and legal status of a debt, when Capstone: (a) sent a collection letter in November 2019, claiming it was Ms. Hill's "final" opportunity to resolve a debt, when it was not, and Capstone knew it was not; (b) repeatedly threatened legal action for non-payment of a debt, despite no intention, authority, or ability to sue Ms. Hill; (c) repeatedly attempted to collect the Debt, founded on the application of unauthorized liquidated damages, despite knowledge that the Debt was not legitimate for this reason; and, (d) reported the Debt to the CRAs even after knowledge that the Debt was not legitimate, in an attempt to compel payment from Ms. Hill.

57.    Capstone violated **15 U.S.C. § 1692e(5)** in that Capstone threatened to take action which could not legally be taken and/or was not intended to be taken, when Capstone repeatedly threatened legal action for non-payment of a debt, despite no intention, authority, or ability to sue Ms. Hill, and when it falsely claimed in its July 2020

collection letter that it would obtain Ms. Hill's CBR to evaluate her credit, when Capstone had no legal ability to obtain a CBR regarding Ms. Hill.

58. Capstone violated **15 U.S.C. § 1692e(8)** when Capstone communicated credit information which was known to be false, or should have been known to be false, when it reported to the CRAs that Ms. Hill owed $2,033, when this amount was primarily – if not exclusively – due to the application of liquidated damages, despite these fees not being allowed pursuant to Section 83.595(4), Florida Statutes, since a separate, signed addendum with the consumer agreeing to pay liquidated damages is required.

59. Capstone violated **15 U.S.C. § 1692f** in that Capstone used unfair means to collect a debt when it: (a) sent a collection letter in November 2019, claiming it was Ms. Hill's "final" opportunity to resolve a debt, when it was not, and Capstone knew it was not; (b) repeatedly threatened legal action for non-payment of a debt, despite no intention, authority, or ability to sue Ms. Hill; (c) falsely claimed in its July 2020 collection letter that it would obtain Ms. Hill's CBR to evaluate her credit, when Capstone had no legal ability to obtain a CBR regarding Ms. Hill; (d) repeatedly attempted to collect the Debt, founded on the application of unauthorized liquidated damages, despite knowledge that the Debt was not legitimate for this reason; and, (e) reported the Debt to the CRAs even after knowledge that the Debt was not legitimate, in an attempt to compel payment from Ms. Hill.

60. Capstone violated **15 U.S.C. § 1692f(1)** in that Capstone attempted to collect an amount not allowed by law. Specifically, it attempted to collect $2,033 from Ms. Hill, when this amount was primarily – if not exclusively – due to the application of

liquidated damages, despite these fees not being allowed pursuant to Section 83.595(4), Florida Statutes, since a separate, signed addendum with the consumer agreeing to pay liquidated damages is required.

61. Capstone's conduct renders it liable for the above-stated violations of the FDCPA, and Ms. Hill is therefore entitled to statutory damages not to exceed $1,000.00 in addition to other relief as this Court deems appropriate.

**WHEREFORE,** Ms. Hill respectfully requests that this Court enter judgment against Capstone, and for her, as follows:

 a. Statutory damages of **$1,000.00**, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

 b. Actual damages, for economic harm and lost credit opportunities, pursuant to 15 U.S.C. § 1692k(a)(1);

 c. Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3); and,

 d. Such other relief that this Court deems just and proper.

## COUNT II
## VIOLATIONS OF THE FCRA

62. Ms. Hill adopts and incorporates paragraphs 1 – 53 as if fully stated herein.

63. Capstone violated **15 U.S.C. § 1681s-2(b)** when it failed to make a reasonable investigation after notice of dispute from a CRA, Experian, since any reasonable investigation would have concluded that Capstone's information could not be verified as accurate because the $2,033 supposedly owed by Ms. Hill to Century was not actually owed. The amount was primarily – if not exclusively – due to the application of

liquidated damages, and these fees cannot be assessed against Ms. Hill pursuant to Section 83.595(4), Florida Statutes, since a separate, signed addendum with the consumer agreeing to pay liquidated damages is required.

64. As a result of Capstone's failures, Ms. Hill's credit report and scores have been damaged, impacting her ability to obtain credit, insurance, and more on favorable terms.

65. Capstone's conduct was willful and intentional, or alternately, was engaged in with a reckless disregard for consumer rights and its duties under the FCRA.

66. Capstone is liable to Ms. Hill pursuant to the FCRA for statutory damages of up to $1,000 *per incident*.

**WHEREFORE**, Ms. Hill respectfully requests that this Court enter judgment against Capstone, and for her, as follows:

a. The greater of Ms. Hill's statutory damages of **$1,000** per incident or her actual damages, pursuant to 15 U.S.C. § 1681n(a)(1)(B) or 15 U.S.C. § 1681o(a)(1);

b. Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3) or 15 U.S.C. § 1681o(a)(2); and,

c. Such other relief that this Court deems just and proper

### COUNT III
### VIOLATIONS OF THE FCCPA

67. Ms. Hill adopts and incorporates paragraphs 1 – 53 as if fully stated herein.

68. Capstone violated **Section 559.72(9), Florida Statutes**, when it asserted a right that does not exist, specifically, the right to obtain a credit report from a CRA regarding Ms. Hill without permissible purpose, when such actions are explicitly prohibited by federal law.

69. Capstone violated **Section 559.72(9), Florida Statutes**, when it asserted a debt was legitimate when it knew it was not, by reporting the Debt to the CRAs, verifying the Debt was accurate despite indicators showing otherwise, and then re-reporting it to the CRAs post-dispute.

70. Capstone made its reports with reckless disregard for whether the Debt was actually the responsibility of Ms. Hill and thus made its reports with malice; as such, Ms. Hill's state law claim is not pre-empted by the FCRA.

71. Malice can be established by evidence showing the defendant made a false statement 'with knowledge that it was false or with reckless disregard of whether it was false or not.'" *Long v. Pendrick Capital Partners II, LLC*, Case No.: GJH-17-1955 (D. Md. Mar. 18, 2019), quoting *New York Times v. Sullivan*, 376 U.S. 254, 279-80 (1964); *see also Capital-Gazette Newspapers, Inc. v. Stack*, 293 Md. 528, 445 A.2d 1038, 1043-45 (Md.1982) (adopting the Supreme Court's definition of malice in the context of Maryland common law defamation cases).

72. Capstone's actions were knowing and intentional, as it has been sued in the past for similar conduct.

**WHEREFORE**, Ms. Hill respectfully requests that this Court enter judgment against Capstone, and for her, as follows:

a. Statutory damages of $**1,000** pursuant to Section 559.77(2), Florida Statutes;

b. Actual damages pursuant to Section 559.77(2), Florida Statutes;

c. Injunctive relief prohibiting Capstone from attempting to collect the Debt from Ms. Hill in any manner not allowed by Florida law, pursuant to Section 559.77(2), Florida Statutes;

d. Reasonable costs and attorneys' fees pursuant to Section 559.77(2), Florida Statutes; and,

e. Such other relief that this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Ms. Hill hereby demands a jury trial on all issues so triable.

Respectfully submitted this **November 3, 2020**, by:

> **SERAPH LEGAL, P. A.**
> /s/ *Brandon D. Morgan*
> Brandon D. Morgan, Esq.
> FBN: 1015954
> bmorgan@seraphlegal.com
> /s/ *Thomas M. Bonan*
> Thomas M. Bonan, Esq.
> FBN: 118103
> tbonan@seraphlegal.com
> 2002 E. 5th Ave., Suite 104
> Tampa, FL 33605
> Tel: 813-567-1230
> Fax: 855-500-0705
> *Attorneys for Plaintiff*

**ATTACHED EXHIBITS LIST**
A    Capstone's Florida CCA License
B    Capstone's Collection Letter to Plaintiff, November 4, 2019
C    Capstone's Collection Letter to Plaintiff, March 18, 2020
D    Capstone's Collection Letter to Plaintiff, July 22, 2020
E    Plaintiff's Experian Consumer Disclosure, August 6, 2020, Excerpt